UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil No. 05-CV-1809 |
| Plaintiff, | ) | |
| | ) | (Judge Kane) |
| v. | ) | |
| | ) | |
| ROBERT E. JOHNSON, | ) | |
| SHARON C. JOHNSON, | ) | |
| SAVE OUR SIGHT FOUNDATION, INC., | ) | |
| CANCER FOUNDATION FOR MELANOMA | ) | |
| RESEARCH, INC., and | ) | |
| OPPORTUNITIES FOR THE BLIND, INC., | ) | |
| Defendants. | ) | |

## VOLUNTARY CONSENT DECREE

A.  **THE PARTIES**

1. The "PLAINTIFF" is the United States of America.

2. The "DEFENDANTS" are ROBERT E. JOHNSON, SHARON C. JOHNSON, SAVE OUR SIGHT FOUNDATION, INC., CANCER FOUNDATION FOR MELANOMA RESEARCH, INC., and OPPORTUNITIES FOR THE BLIND, INC. Defendants SAVE OUR SIGHT FOUNDATION, INC.,

1

CANCER FOUNDATION FOR MELANOMA RESEARCH, INC., OPPORTUNITIES FOR THE BLIND, INC. are non-profit corporations, incorporated under the laws of the State of Maryland and the District of Columbia. All of the DEFENDANTS, including ROBERT and SHARON JOHNSON, have been engaged and are presently engaged in the business of soliciting charitable donations through mass mailings submitted and transmitted through the U.S. Mail.

## B. BACKGROUND

3. The above captioned proceeding was initiated by PLAINTIFF'S filing of a civil complaint for injunctive relief, pursuant to 18 U.S.C. 1345, on September 6, 2005. In said complaint PLAINTIFF alleged DEFENDANTS were perpetrating an on-going Mail Fraud Scheme that was yielding them hundreds of thousands of dollars in charitable donations through the mass mailing of solicitations containing false and misleading representations regarding the recipient's chances of winning a sweepstakes prize and/or contest.

4. On September 6, 2005, this Court granted PLAINTIFF a Temporary Restraining Order, prohibiting Defendants and their agents from using the mails to transmit any sweepstakes or charitable donation related documents, and from withdrawing or transferring any monies, funds, or other assets within their possession or control.

5. With the consent of the DEFENDANTS, on September 8, 2005, this Court entered a Preliminary Injunction prohibiting Defendants and their agents from using the mails to transmit any sweepstakes or charitable donation related documents, and from withdrawing or transferring any monies, funds, or other assets within their possession or control.

6. DEFENDANTS dispute and deny the allegations in PLAINTIFF's Complaint and vigorously deny any accusations of wrongdoing. DEFENDANTS contend that their sweepstakes promotions utilizing a pre-selected winner fully comply with applicable rules and regulations, including, but not limited to, U.S. Postal Service Publication No. 546, and that the mailings are not deceptive or misleading in any way and do not constitute a violation of applicable law. Accordingly, on November 15, 2005, DEFENDANTS filed a Motion Pursuant to Fed. R. Civ. P. 12(b)(6) to Dismiss Plaintiff's Complaint.

7. The parties desire to settle fully the above-captioned lawsuit and any and all claims and controversies arising out of the charitable sweepstakes mentioned above and all disputes that have arisen, or which may arise, prior to, or at the time of, execution of this Voluntary Consent Decree and wish to memorialize their understanding in this Voluntary Consent Decree.

C. **DEFINITIONS**

8. For purposes of the Voluntary Consent Decree, a "sweepstakes" is an advertising or promotional device by which items of value (prizes) are awarded to participating consumers by chance, with no purchase or entry fee required to win. A "lottery" is an advertising or promotional device by which items of value (prizes) are awarded to members of the public by chance, but which requires some form of payment to participate.

9. For purposes of this Voluntary Consent Decree, "represent" means to state, or to imply through statements, questions, conduct, graphics, symbols, lettering, formats, devices, language, documents, messages, or through any other manner or means by which meaning might be conveyed. This definition applies to other forms of the word "represent," including but not limited to "representing." In determining the express or implied meaning of a representation that appears on the outside of a mailing envelope, only matter on the outside of the envelope shall be considered.

10. The terms "mailings" and "mail" shall mean any document submitted to the U.S. Postal Service or any other common carrier, including but not limited to UPS, DHS, or FEDERAL EXPRESS, for delivery from or to any address within the territorial jurisdiction of the United States of America.

**D.   PERMANENT INJUNCTION**

11. DEFENDANTS hereby agree to the entry of a PERMANENT INJUNCTION by this Court, which shall permanently enjoin any and all of the DEFENDANTS from conducting, creating, authorizing, engaging, or participating, in any manner or degree, in any sweepstakes, lottery, contest or prize promotion mailing that represents that the recipient of a sweepstakes, lottery, contest, or prize promotion has won, is the winner, or unconditionally will be the winner of a sweepstakes, lottery or a prize unless:

    a. Such person or their entry has in fact won or will be determined to be the winner, and

    b. The representation is not false, deceptive, or misleading, and

    c. The prize and its value are clearly and conspicuously disclosed in the representation itself.

12. Without in any way limiting the scope of the foregoing paragraph, the DEFENDANTS shall immediately cease, upon the entry of this Voluntary Consent Decree, sending, conducting, creating, authorizing, engaging, or participating in any mailing utilizing sweepstakes, lotteries or promotions which include the following acts and practices:

    a. Using any term that misrepresents, either directly, or by implication, that the recipient:

       i. is guaranteed to be the winner of the prize;

      ii. has been or is confirmed or verified to be the winner;

     iii. has received or definitely will receive a prize check;

     iv. has attained an improved, enhanced or elevated status in the sweepstakes or prize promotion over other timely entrants or that the recipient has an improved or elevated chance of winning the prize over other recipients including, but not limited to, through the use of congratulatory expressions; or

     v. is subject to "serious" consequences or is "at risk" by failing to reply, *provided however*, that statements that accurately reflect the sweepstakes, promotion or contest's deadline date shall not be deemed to violate this section.

b. Using a payment schedule or schedules so that the recipient believes that he or she will be receiving a prize on a date certain, unless such recipient has in fact won a prize and the payment schedule is true;

c. Misrepresenting directly, or by implication, that the contents of a mailed communication require the recipient's urgent attention,

*provided however*, that a mailing that includes a request for a prompt response shall include a clear and conspicuous disclosure of the sweepstakes entry deadline date on the face of the first page of any mailing and in the contest rules;

d. Misrepresenting directly, or by implication, that a governmental entity played some role in approving or originating the mailing, or that the postal service or government provided any degree of heightened attention or protection to the mailing;

e. Misrepresenting directly, or by implication, that the recipient is the only person, or is one of only a few persons, to whom the communication has been delivered or that the group of persons to whom the communication has been delivered is smaller than it actually is, *provided however*, that a statement that accurately reflects the odds of the recipient's winning shall not be deemed to violate this section;

f. Setting out the recipient's name in a list of winners in a solicitation (unless the recipient is actually a winner of the sweepstakes);

g. In offering a prize promotion communication that involves a

7

        pre-selection process, failing to utilize an independent third party to pick a number at random which it keeps secret from the sponsor until the end of the promotion, failing to ensure that the pre-selected winning number is within the range of numbers actually mailed for that sweepstakes (or designate as the winning number a preselected alternative number that is within such mailed range), or if the winning pre-selected number is not returned at the end of the sweepstakes, failing to award a prize offered in a random drawing from among eligible entries in accordance with the sweepstakes mailings' official rules;

h.    Misrepresenting directly, or by implication, that a sweepstakes prize will or may be awarded in a non-random manner or that any entry has, will have, or may have any advantage over other timely entries in a sweepstakes;

i.    Misrepresenting directly, or by implication, the likelihood of the recipient winning any sweepstakes or prize;

j.    Misrepresenting directly, or by implication, in a solicitation in relation to any sweepstakes, prize or entry that its employees or others acting on its behalf, real or fictitious, have personal

8

feelings concerning or a personal relationship with recipient of the communication, including, but not limited to, representations that:

    i.    they have a shared interest with the recipient;

    ii.    they have any belief, feeling, or opinion relating specifically to the recipient, such as representing that the recipient deserves to win;

    iii.    they have taken or refrained from taking or will take or will refrain from taking any action concerning the recipient; provided, however, that the foregoing does not prohibit general expressions of goodwill. Such expressions shall not expressly state or imply that a recipient or potential donor should, deserves to or is entitled to win or have improved chances of winning a sweepstakes, prize or other benefit;

k.    Misrepresenting directly, or by implication personalized dramatizations of business processes or winner-selection methodologies or otherwise such as describing the following:

    i.    fictitious conversations, meetings, events or other actions

9

       purporting to have taken place that relate specifically to the recipient, including but not limited to, conversations between or meetings of employees or representatives of DEFENDANTS or its charity clients specifically relating to the recipient;

  ii.    fictitious conversations, meetings, events or actions to be set in the future and relating specifically to the recipient where such events are unlikely to occur;

  iii.   fictitious documents purportedly prepared or drafted for possible future use which relate specifically to the recipient, including but not limited to, internal documents, reports, and communications between DEFENDANTS and others that pertain to the recipient;

l.    Misrepresenting directly, or by implication that sweepstakes entries from donors and non-donors are treated differently or that an advantage is granted to a donor or a disadvantage to a non-donor;

m.  Using a fictitious department, fictitious title, fictitious return address or any misleading representation that there is a division,

       department, specific individual or separate entity that handles sweepstakes or prize promotions for the charitable organizations; and

   n.   Making any materially false, deceptive, or misleading statement, or engaging in any unfair or unconscionable act or practice or making any material omission as it relates to the subject of this Voluntary Consent Decree

13.   DEFENDANTS shall include in every mailing an insert, no smaller than two inches by three inches (2" x 3"), in no less than 10 point font and which on the face of the insert clearly and conspicuously discloses the following and contains no other matter on that side: "You have not won. Entry is free. Donating will not increase your chances of winning. You may or may not have a number that is the winning number. Odds that you will win [prize] will be no less than one in _____ [or are estimated at]." In addition, when offering a "second chance" prize when utilizing a pre-selected winner sweepstakes, the statement "Odds are determined based upon the amount of entries received" shall also appear. Unless otherwise provided in this paragraph, the opposite side of the insert shall have the following limitations: (1) the information on the opposite side of the insert shall be information that is unrelated to any sweepstakes promotion; (2) the information shall

11

be truthful, educational and related to a charitable purpose; and (3) it shall not contain any colorful or otherwise attention-distracting graphics. Notwithstanding the foregoing, DEFENDANTS shall have the option to place the sweepstakes rules on the opposite side of the insert with the following limitations: the size of the insert cannot be smaller than four inches by five inches (4" x 5") and the type size of the rules shall be in no less than 12-point font.

14. DEFENDANTS shall include in each solicitation, including entry opportunities, a clear and conspicuous statement of the procedure by which a recipient's name may be removed from the company's active mailing list. This request shall apply to all charitable solicitations involving a sweepstakes mailing. A recipient's name shall be removed from the list within 30 calendar days of receipt of a request that a recipient's name be removed.

E. **IMPOUNDED MAIL**

15. As a result of the Court's September 6, 2005, Temporary Restraining Order and September 8, 2005, Preliminary Injunction, approximately 60,000 pieces of mail addressed to the DEFENDANTS were impounded by the U.S. Postal Service. It is expressly understood and agreed that non-sweepstakes related mail addressed to the following post office boxes shall be returned to DEFENDANTS: P.O. Box 399, Falling Waters, WV; P.O. Box 98, Fairplay, MD; and P.O. Box 574,

12

Blue Ridge Summit, PA. The parties further agree that the remaining impounded mail shall be returned, if possible, to the Senders by the U.S. Postal Service. If the Sender or the Sender's return address is unknown, or the mail is otherwise unreturnable, the parties agree that such mail may be opened and/or destroyed in the discretion of the U.S. Postal Service. Any checks or money orders found within said mail may also be destroyed in the discretion of the U.S. Postal Service. Any cash found within said mail shall be retained by the U.S. Postal Service to offset the cost of returning the impounded mail.

F.  **MAILING LISTS**

16. Within 30 days of the entry of this Voluntary Consent Decree, DEFENDANTS shall tender, free of charge, competent electronic versions of all donor solicitation mailing lists within their possession or control to the U.S. Postal Inspection Service. The mailing lists shall be provided in an electronic format selected by the Inspection Service. The Inspection Service may employ these mailing lists to disseminate, in its discretion and at its expense, general consumer fraud education related materials to the public.

G.  **MONETARY PAYMENTS**

17. Within 10 days of the entry of this Voluntary Consent Decree, DEFENDANTS shall tender a certified check to Plaintiff in the amount of $7,500.

13

Said check shall be made payable to the "**U.S. Postal Service**" and shall be applied by the Postal Service to offset the expense incurred in returning the above referenced impounded mail.

18. Within 10 days of the entry of this Voluntary Consent Decree, DEFENDANTS shall tender a certified check to Plaintiff in the amount of **$10,000**. Said check shall be made payable to the "**U.S. Postal Inspection Service, Consumer Fraud Fund**" and shall be employed by the Service to promote Consumer Fraud awareness and public education.

19. Within 10 days of the entry of this Voluntary Consent Decree, DEFENDANTS shall donate the sum of **$275,000** to **COMMUNITY HEALTH CHARITIES (CHC)**, 200 North Globe Road, Suite 800, Arlington, Virginia, with the stipulation that 70% of said monies shall be distributed to CHC charities that benefit the blind, with the remainder of the donation to be distributed to CHC charities that promote cancer research.

## H. PROOF OF PAYMENT AND DISMISSAL

20. Within 21 days of the entry of this Voluntary Consent Decree DEFENDANTS shall provide PLAINTIFF proof that all of the above referenced payments have, in fact, been made.

21. Immediately upon the entry of this Voluntary Consent Decree,

PLAINTIFF shall file a Notice of Dismissal of the above captioned action pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure and the action docketed at No. 1:05-CV-1809 in the United States District Court for the Middle District of Pennsylvania shall be marked settled, discontinued and finally dismissed and the September 8, 2005 Preliminary Injunction shall be lifted by Order of the Court. Notice of the Complaint's dismissal and the lifting of the Preliminary Injunction shall be provided immediately by PLAINTIFF to BR Direct, Hagerstown Trust Company, First National Bank of Greencastle, Mercantile Southern Maryland Bank, the United States Postal Service and any other person or entity who received notice of the Preliminary Injunction from any officer or agent of the United States. Said dismissal shall not, however, restrict or affect the right of any party, including PLAINTIFF, to 1) seek enforcement of this Voluntary Consent Decree, 2) to petition the Court for an Order holding any other party in contempt, or 3) to seek monetary damages, attorney fees, or other injunctive relief for alleged violations of this Voluntary Consent Decree, as set forth in this Agreement.

## G.   RETENTION OF JURISDICTION, VIOLATION AND REMEDIES

22. This Court shall retain jurisdiction over this case to entertain any and all alleged violations of this Voluntary Consent Decree and/or the Permanent Injunction. Should any party violate any provision of this Voluntary Consent

15

Decree or the Permanent Injunction, or fail to make any payment specified herein, the offended party may, in its discretion, seek further judicial relief by filing a motion before this Court, including but not limited to a motion for contempt, monetary damages, and/or injunctive relief. Should the Court determine, by a preponderance of the evidence, that there was, in fact, a violation of this Voluntary Consent Decree or the Permanent Injunction, the offended party shall also be entitled to recover reasonable attorneys' fees and costs.

## H.  OTHER AGREEMENTS

23. Upon PLAINTIFF's receipt of proof of payment referenced above, the United States Attorney for the Middle District of Pennsylvania agrees not to bring any criminal charge or any other new civil action against any of the DEFENDANTS arising out of the sweepstakes mailings described above, other than that authorized by this Agreement. Nor will the United States Attorney for the Middle District refer any such matter to any state or local government entity for investigation, prosecution or punishment.

24. The payments required by DEFENDANTS under this Voluntary Consent Decree shall be in full settlement of any and all claims for damages, injuries and attorneys' fees arising out of or in any way related to the sweepstakes mailings described above held by PLAINTIFF. PLAINTIFF shall not be entitled to any

further payment other than those authorized by this Agreement.

25. The parties have voluntarily entered into this Voluntary Consent Decree for settlement purposes in order to resolve the matters between them. The entry into this Voluntary Consent Decree, including, but not limited to, the payments made by DEFENDANTS described herein, are not intended to be, nor do they in any manner constitute, nor are they to be construed by any person, court or agency, as being an express or implied admission by DEFENDANTS, or any one of them, that he, she or it has in any respect committed or engaged in any impropriety, illegality, or wrongdoing of any kind, or any violation of any law, statute or regulation with respect to any thing or matter whatsoever or a breach or violation of any right or obligation that any DEFENDANT may owe or may have owed to any person or entity. The parties further agree that, by entering into this Voluntary Consent Decree, DEFENDANTS do not admit to any facts, or any liability or responsibility of any kind or character, and specifically deny any violation of any municipal, local, state or federal law or regulation or common law obligation or duty and their decision to enter into this Voluntary Consent Decree shall not be deemed an admission of any kind.

26. It is expressly agreed by and between the parties that this Voluntary

17

Consent Decree sets forth all the agreements, conditions and understandings between them and that there are no promises, agreements, conditions or understandings, oral or written, other than herein set forth.

27. This Voluntary Consent Decree is binding upon each and every DEFENDANT, their successors and assigns, and all persons and entities acting in concert with them, including but not limited to, their agents, employees, marketers, clients and contractors. Defendants ROBERT E. JOHNSON and SHARON C. JOHNSON hereby represent and verify that they have the capacity as Officers and/or Directors of the corporate Defendants to legally bind and obligate them to this Agreement.

**CONSENTED TO BY:**

_____
ROBERT E. JOHNSON

Date: Feb 8, 2006

_____
SHARON C. JOHNSON

Date: Feb 8, 2006

_____
ROBERT E. JOHNSON
President, SAVE OUR SIGHT FOUNDATION, INC.

18

Date: Feb 8, 2006

_____
SHARON C. JOHNSON
Chief Financial Officer and Treasurer, SAVE OUR SIGHT FOUNDATION, INC.

Date: Feb 8, 2006

_____
ROBERT E. JOHNSON
President, OPPORTUNITIES FOR THE BLIND, INC.

Date: Feb 8, 2006

_____
SHARON C. JOHNSON
Administrator, OPPORTUNITIES FOR THE BLIND, INC.

Date: Feb 8, 2006

_____
ROBERT E. JOHNSON
President, CANCER FOUNDATION FOR MELANOMA RESEARCH, INC.

Date: Feb 8, 2006

_____
SHARON C. JOHNSON
Chief Financial Officer and Treasurer, CANCER FOUNDATION FOR MELANOMA RESEARCH, INC

Date: Feb 8, 2006

_____
THOMAS MARINO
US Attorney
Middle District of PA

Date:

**APPROVED BY THE COURT:**

s/Yvette Kane
The Honorable Yvette Kane
United States District Court Judge
Middle District of Pennsylvania

Date: March 1, 2006

20